UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INSURENT AGENCY CORPORATION, and RS HOLDINGS CORPORATION,<br><br>                       Plaintiffs,<br><br>v.<br><br>THE HANOVER INSURANCE COMPANY; GUARANTR, INC. D/B/A GUARANTR AGENCY; and RONALD MACDONALD,<br><br>                       Defendants. | Civil Action No. 16-CV-3076 (LGS) |

## PLAINTIFFS' COUNTER-STATEMENT OF UNDISPUTED FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56.1 of the Local Rules for the United States for the Southern District of New York, Plaintiffs RS Holdings Corporation and Insurent Agency Corporation ("Plaintiffs") hereby submit the following statement of undisputed material facts in opposition to Opposition to Defendants' Motion for Summary Judgment. A copy of the record evidence on which Plaintiffs rely to support Plaintiffs' assertion of the undisputed material facts is submitted herewith as the Declarations of Jeffrey L. Geller, Robert Rosenberg, Michael A. Crow, David Keyko, Esq., and Adam Rader, Esq., with exhibits, unless otherwise noted.

1. The Guarantors created two different proposals to carriers, one dated February, 2015, and the other dated March, 2015, each of which contained Insurent Lease Guaranty Program's loss rate, and loss ratio. (Rader Decla., Exs. A and G; PX-17 and PX-19).

2. The loss rate and loss ratio are the most valuable trade secrets of Plaintiffs, and they appear as exact numbers, not estimates, in the proposal to carriers and prospective investors

of Guarantors, and those documents do not state that they are estimates (Geller Decla. ¶¶ 10-13; Rader Decla., Exs. A and G, PX-17 and PX-19).

3. Loss rate, and loss ratio were Insurent's trade secrets from 2008 through 2016. (Geller Decla., 10-13). Other than Mr. Geller, Mr. Rosenberg, Mr. Sczark, and Mr. MacDonald, no other Insurent employee had access to this detailed information (Geller Decla., ¶8).

4. The proposal that the Guarantors sent to Hanover (PX-17) in March 2015 included the following statements, which exactly identify Insurent's trade secrets:

   a) Insurent's loss rate is ▮▮▮▮▮,
   c) Insurent's loss ratio is ▮▮▮▮▮;
   d) Actuarial analysis based on publicly available data show ▮▮▮▮▮ and
   e) "Based on our research, we learned that Insurent's loss ratio is ▮▮▮▮▮."

There was no publicly available data disclosing any of this information, and no one could estimate it by talking to landlords (Rader Decla., Ex. A, PX17; Geller Decla., ¶¶ 14-15).

5. The proposal that the Guarantors sent to prospective investors (PX-19) sometime in 2015 included the following statements, which exactly identify Insurent's trade secrets:

   a) Insurent's loss rate is ▮▮▮▮▮
   c) Insurent's loss ratio is ▮▮▮▮▮
   d) "Actuarial analysis based on publicly available data show ▮▮▮▮▮; and
   e) "Based on our research, we learned that Insurent's loss ratio is ▮▮▮▮▮."

There was no publicly available data disclosing any of this information, and no one could estimate it by talking to landlords (Rader Decla., Ex. G, PX19; Geller Decla., ¶¶ 14-15).

6. The Guarantors' Proposal to Carriers included a listing of personnel, one of whom was identified as "Mr. X", who was "identified and committed" as Chief Underwriting Officer for the Guarantors as of the time the Guarantors got funded or launched. The same information about Mr. X appeared in Defendants' Private Placement PowerPoint presentation, also created in

2015 (Rader Decla., Ex. A; PX-17).

7. Mr. Bonneville testified under oath that Mr. X was a placeholder, no one had as yet been identified for the position. This testimony was false. (Rader Decla., Ex.D, Bonneville Tr. 95:7-95:22).

8. Mr. Bonneville denied under oath at his deposition that Ronald MacDonald was Mr. X as of March, 2015. This testimony was false. (Rader Decla., Ex. D; Bonneville Tr. 95:7-95:22).

9. Ronald MacDonald denied under oath at his deposition that he was Mr. X, as of March 2015. This testimony was false. (Rader Decla., Ex. O; MacDonald Tr. 155:22-156:1).

10. Julien Bonneville told Scott Reinke, Hanover's Director of Transactional Security, that Ronald MacDonald was Mr. X (Rader Decla., Ex. H; Reinke Tr. 120:1-8).

11. The Guarantors Proposal to Landlords identifies Ronald MacDonald as a consultant and Chief Underwriting Officer (Rader Decla., Ex. E, PX-16).

12. Mr. Reinke admitted that he "purged" his handwritten notes of the first telephone conference between Hanover (Mr. Reinke and Mr. Thomas, then President of Hanover Surety Company) and the Guarantors' founders, Mr. Bonneville and Mr. Miglietti, before moving his office. (Rader Decla., Ex. H, Reinke Tr. 69:20-72:1).

13. This "purge" appears to have taken place during the pendency of this action, since Mr. Reinke apparently moved from Minneapolis, Minnesota to Nashville, Tennessee during the summer of 2017. (Rader Decla., Exs. P and Q, e-mails of Hanover Counsel dated September 15, 2017 and September 19, 2017).

14. Given Mr. Bonneville's admission to Mr. Reinke, it appears that Julien Bonneville gave false testimony under oath at his deposition (Rader Decla., Exs. D and H,

Bonneville Tr. 95:7-95:22, Reinke Tr. 120:1-8).

15. Given Mr. Bonneville's admission to Mr. Reinke, it appears that Defendant Ronald MacDonald gave false testimony under oath at his deposition (Rader Decla., Exs. H and O, Reinke Tr. 120:1-8, MacDonald Tr. 155:22-156:1).

16. Ronald MacDonald worked as a Managing Director of Insurent Agency Corporation, Head of Claims and Surveillance and a board member on the Insurent Agency Corporation board of directors from 2007 to March of 2016, and became a shareholder of RS Holdings Corporation in 2006, and remains a shareholder (Rader Decla., Ex. O; MacDonald Tr. 21:18-23:18; 58:25-60:6).

17. Ronald MacDonald gave confidential Insurent documents to his son in 2014 (Rader Decla., Ex. O; MacDonald Tr. 119:20-120:8; Rader Decla., Exs. L and S, PX-7, PX-13).

18. Ronald MacDonald had access to Insurent's trade secret data, including actuarial and financial information relating to premiums received, loss rate, and loss ratio, from the time Insurent began operations in 2008 until he resigned on March 3, 2016 (Geller Decla., ¶ 10).

19. Insurent had been in business for about seven years when Guarantors created its Proposals to Carriers, and Insurent was the only company that had compiled actuarial data relating to residential lease guarantees in New York City. (Geller Decla., ¶¶ 10-13).

20. Ronald MacDonald became a disgruntled officer of Insurent in around 2012 when he lost over 90% of his RS Holdings shares to another officer (Steven Czark) when he could not repay a loan used to purchase those shares (Rader Decla., Ex. O, MacDonald Tr. 131-133; Geller Decla. ¶ 8).

21. None of the rate filings made through 2016 by Insurent's underwriters, CastlePoint Insurance Company or Argonaut Insurance Company, filed with the New York State

Department of Financial Services, contained any information about loss rates, loss ratios, or premiums received. (Geller Decla., ¶2).

22. Actuarial data about loss rate, and loss ratio from 2010 to 2015 obtained from Insurent, the only major company in the residential lease guaranty business in New York City, would be significant information to a prospective competitor or investor. (Geller Decla., ¶2).

23. No one at Hanover asked Mr. Bonneville the source of the Insurent actuarial data contained in the Guarantors' proposal to carriers Rader Decla., Exs. A, H and R;(PX-17), Reinke Tr. 92:19-93:5, Thomas Tr. 47:15-22).

24. Hanover personnel, evaluating the Guarantors' Proposal to Carriers, considered the Insurent information contained in the proposal and also did an independent study to determine whether to enter the residential lease guaranty business with the Guarantors as their agent (Rader Decla. Exs. H and R; Reinke Tr. 90:12-92:18; Thomas Tr.41:1-56:14).

25. Ronald MacDonald lied to Jeffrey Geller and to Robert Rosenberg when he told him in March, 2016 that he was not going to work for the Guarantors (Geller Decla. ¶ 18).

26. TheGuarantors hired John MacDonald and Ronald MacDonald to obtain trade secrets and confidential information belonging to Insurent (Geller Decla. ¶ 19).

27. TheGuarantors and Hanover copied Insurent's copyrighted documents word for word and advertised this to landlords, along with the false statement that Ronald MacDonald, "[Former] Chief Underwriting and Claims Officer at Insurent", was now consulting for them as an underwriter (Rader Decla., Ex. E, PX-16).

28. The Guarantors told landlords that their rates were 10-15% less than Insurent as stated in the Deposition of Julian Bonneville. Contrary to that assertion, their rates were on average 3-5% less and only in one of the seven risk categories was it up to 10% less. (Rader

Decla., Ex. D; Geller Decla. ¶ 8).

Dated: February 27, 2018                    Respectfully Submitted,

                                                                    EATON & VAN WINKLE LLP

                                                                    By: /s/ Robert D. Katz
                                                                    Robert D. Katz
                                                                    Adam J. Rader
                                                                    3 Park Avenue, 16th Floor
                                                                    New York, NY 10016
                                                                    Tel: (212) 779-9910
                                                                    Fax: (212) 779-9928
                                                                    *Attorneys for Plaintiffs*