USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/20/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
:
INSURENT AGENCY CORPORATION, et al., :
                                Plaintiffs, :
:     16 Civ. 3076 (LGS)
                -against- :
:     **OPINION AND ORDER**
THE HANOVER INSURANCE :
COMPANY, et al. :
                               Defendants. :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Insurent Agency Corporation ("Insurent") specializes in serving as a guarantor for residential leases. Insurent and its parent company, Plaintiff RS Holdings Corporation ("RS Holdings"), sued Insurent's competitor, Defendant Guarantr, LLC, d/b/a The Guarantors Agency ("Guarantors"), along with Defendants The Hanover Insurance Company ("Hanover") and Ronald MacDonald, asserting claims under federal and New York law. Defendants move for summary judgment as to all claims against all defendants. The motion is granted in part and denied in part. In addition, Plaintiffs move to amend their complaint to add as a plaintiff RS Reinsurance (Bermuda) Ltd. ("RS Reinsurance"), a Bermuda corporation and wholly-owned subsidiary of Plaintiff RS Holdings. Plaintiffs' motion is granted.

## I. BACKGROUND

### A. Factual Background

      The facts below are drawn from the parties' Rule 56.1 Statements and other submissions on this motion and are construed in favor of Plaintiffs as the nonmoving parties. *See Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017).

      Plaintiff Insurent launched a residential lease guaranty business in New York City in 2008. In or around 2005, Ronald MacDonald, an insurance professional, began working at Insurent before its launch. When Insurent launched its business, MacDonald became a full-time

employee and was appointed Managing Director and Head of Claims and Surveillance. Until Defendant Guarantors was established in 2016, Insurent was the only successful residential lease guarantor in the city.

In 2010, Julien Bonneville, then an incoming student at Columbia Business School, obtained a lease guaranty from Insurent because he had recently emigrated from France and could not rent an apartment in New York City without a guarantor. In 2014, after Bonneville had graduated from business school, he decided to compete with Insurent in the residential lease guaranty business. That year, he met with MacDonald's son John through a mutual friend, and John offered to introduce Bonneville to his father. Bonneville and MacDonald met in December 2014 at the Grand Hyatt Hotel in Midtown Manhattan. Bonneville claims that he and MacDonald discussed the insurance industry only generally at the Grand Hyatt meeting, and that they did not speak again until the fall of 2015.

Bonneville's lease guarantee business needed an insurance company to issue policies to back the lease guarantees. In early 2015, John gave Bonneville a 2006 Insurent presentation pitching an offering of preferred shares to investors, which John had received from his father in 2014. The presentation was marked "Confidential" and contained projections about sales and losses, information about the amount of money Insurent sought to raise, how those funds would be allocated among subsidiaries, and the structure of the company and its subsidiaries.

Guarantors created and delivered to Hanover a "Presentation to carriers" dated March 2015, which contains statements of Insurent's loss rate and loss ratio, which Insurent Chief Operating Officer Jeffrey Geller attests "constitute the company's most valuable and closely-guarded trade secrets." Geller claims that these statements are "too exact and accurate to be estimates." Guarantors' presentation refers to "Mr. X," who the presentation states is "[i]dentified and committed" to be the "full-time" Chief Underwriting Officer for Guarantors

2

"once operations start." Geller also attests that Guarantors and Hanover obtained Insurent's legal agreements with customers and copied them word for word. Emails between Guarantors and Hanover personnel between April and May 2015 indicate that Bonneville was consulting Mr. X regarding Hanover's proposed revisions to legal documents connected to Guarantors' product. In late 2015, Hanover agreed to back Guarantors.

MacDonald resigned from Insurent in March 2016 and started working at Guarantors at some point within the next two months. His son John also worked at Guarantors from November 2015 until April or May 2016.

### B. Procedural History

Plaintiffs commenced this lawsuit in April 2016 and amended their complaint in June and September 2016. The Second Amended Complaint ("Complaint"), the operative complaint, asserts claims for (1) copyright infringement; (2) misappropriation of trade secrets under New York law; (3) misappropriation of trade secrets under the federal Defend Trade Secrets Act ("DTSA"); (4) unfair competition due to trade secret misappropriation; (5) breach of fiduciary duty; (6) interference with prospective business advantage; (7) false advertising and promotion under § 43(a) of the Lanham Act; (8) false advertising under New York General Business Law ("NYGBL") § 350; (9) breach of contract; and (10) inducement of breach of contract. On June 27, 2017, Hanover's motion to dismiss Counts 5, 6, 7 and 10 as to itself was granted.

## II. STANDARD

### A. Summary Judgment

Summary judgment is appropriate where the record establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986); *accord Nick's Garage*, 875 F.3d at 113 (internal quotation marks omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Liberty Lobby*, 477 U.S. at 248; *accord Saleem v. Corp. Transp. Grp., Ltd.*, 854 F.3d 131, 148 (2d Cir. 2017).

The court must construe the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of the nonmoving party. *Liberty Lobby*, 477 U.S. at 255; *accord Soto v. Gaudett*, 862 F.3d 148, 154 (2d Cir. 2017). When the movant has properly supported its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (alteration in original) (internal quotation marks omitted); *accord Dudley v. N.Y.C. Hous. Auth.*, No. 14 Civ. 5116, 2017 WL 4315010, at *14 (S.D.N.Y. Sept. 25, 2017).

### B. Leave to Amend

"Leave to amend should be 'freely give[n] . . . when justice so requires,' Fed. R. Civ. P. 15(a)(2), but should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (some internal quotation marks omitted). While "[a] proposed amendment . . . is futile when it could not withstand a motion to dismiss[,]" *F5 Capital v. Pappas*, 856 F.3d 61, 89 (2d Cir. 2017) (internal quotation marks omitted), the standard for assessing futility changes depending on the stage of the litigation, *see, e.g.*, *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001). Where significant discovery has occurred, a court is not limited to the

4

pleadings in assessing the futility of proposed amendments or supplementation. *See, e.g.*, *Port Auth. Police Benevolent Ass'n, Inc. v. Port Auth. of N.Y. & N.J.*, 15 Civ. 3526, 2016 WL 6083956, at *6-7 (S.D.N.Y. Oct. 17, 2016).

## III. DISCUSSION

### A. Trade Secret Misappropriation and Unfair Competition (Counts 2, 3 and 4) by Guarantors and MacDonald

Summary judgment is denied as to Plaintiffs' claims against Guarantors and MacDonald for trade secret misappropriation under New York and federal law, and unfair competition under New York law (Counts 2, 3 and 4) because a reasonable juror could conclude from the evidence in the record that MacDonald disclosed proprietary information concerning Insurent's loss rate and loss ratio to Guarantors.

To prove a claim for misappropriation of trade secrets under New York law, "a plaintiff must demonstrate: '(1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means.'" *Schroeder v. Pinterest Inc.*, 17 N.Y.S.3d 678, 690 (1st Dep't 2015) (quoting *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43-44 (2d Cir. 1999)); *accord Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009). "Improper means" generally refer to "means which fall below the generally accepted standards of commercial morality and reasonable conduct." *Bancorp Servs., LLC v. Am. Gen. Life Ins. Co.*, No. 14 Civ. 9687, 2016 WL 4916969, at *11 (S.D.N.Y. Feb. 11, 2016) (internal quotation marks omitted).

The DTSA provides a cause of action to "[a]n owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). Misappropriation is defined to include the "use of a trade secret of another without express or implied consent by a person who .

. . used improper means to acquire knowledge of the trade secret." *Id.* § 1839(5)(B). "[T]he term 'improper means' . . . includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." *Id.* § 1839(6)(A).

To state a claim of unfair competition through misappropriation, "a plaintiff must allege that a defendant [(1)] misappropriated plaintiff's labor, skills, expenditures or good will, and [(2)] displayed some element of bad faith in doing so." *Schroeder*, 17 N.Y.S.3d at 693; *accord APF Mgmt. Co., LLC v. Munn*, 56 N.Y.S.3d 514, 151 A.D.3d 668, 671 (2d Dep't 2017). "In this context, bad faith can be established by a showing of fraud, deception, or an abuse of a fiduciary or confidential relationship." *Schroeder*, 17 N.Y.S.3d at 693.

Defendants move for summary judgment on these claims based on their assertion that (1) Plaintiffs have proffered no direct evidence that Defendants procured or used any of Insurent's trade secrets, and (2) the circumstantial evidence is insufficient to support a reasonable inference of trade secret misappropriation. On the contrary, the record contains circumstantial evidence from which a reasonable jury could find that MacDonald improperly shared Insurent's proprietary loss ratio information with Guarantors, which then used the information to pitch its product to Hanover.

First, in 2014, MacDonald sent his son John, a former Insurent employee, a 2006 presentation marked "Confidential." John shared the presentation with Bonneville and started working at Guarantors in 2015. Second, a Guarantors presentation to carriers dated March 2015 includes ranges for Insurent's loss rate and ratio that are notably close to the actual figures. In particular the range listed for Insurent's loss ratio is close Insurent's actual loss ratio over a six-year range, and substantially below the figure that Guarantors purportedly computed using

"[a]ctuarial analysis based on publicly available data."[1] Defendants' insurance expert, Laura Shanahan, admitted in her deposition that she was not aware of publicly available information concerning Insurent's loss rate and ratio. Third, the March 2015 Guarantors presentation includes information about its team members, one of whom is listed as "Mr. X," who was purportedly "[i]dentified and committed" to be Guarantors' Chief Underwriting Officer, who was to start "[f]ull-time . . . once operations start." Emails between Guarantors and Hanover personnel between April and May 2015 indicate that Bonneville was consulting Mr. X regarding Hanover's proposed revisions to legal documents connected to the product. Scott Reinke, Hanover's Director of Transactional Surety, testified at his deposition that Bonneville eventually revealed to him that MacDonald was Mr. X. Insurent's Chief Operating Officer Jeffrey Geller testified that MacDonald lied to him when he resigned in March 2016 by denying that he was going to work for Guarantors.

Defendants counter with their own evidence and argument that no trade secret misappropriation occurred. Regarding the 2006 pitch presentation, MacDonald testified that he sent the presentation to his son before his son joined Guarantors as a sample of how to pitch a start-up to institutional investors. Bonneville testified that the presentation MacDonald sent to his son was outdated and contained no commercially useful material. Regarding Insurent's actuarial information, Bonneville attests that he independently estimated the company's loss rate and ratio using public information and interviews with landlords. Regarding the "Mr. X," Bonneville testified that "Mr. X" was a placeholder and that he had several candidates in mind who fit the

---

[1] Guarantors state in the presentation that based on publicly available data, they can conclude that Insurent's loss ratio was less than (x)%. They state that they "learned" "[b]ased on their research" that Insurent's loss ratio is lower, between (a)% and (b)%. Insurent's actual loss ratio was between (a).07% and (b+1).37% from 2010 to 2015. Letters are substituted for numerals in this opinion as Insurent claims that the actual figures are trade secrets.

qualifications listed in the March 2015 presentation. These are factual assertions that create disputed issues of fact and an alternative inference, which are properly addressed to a jury at trial and are not grounds for summary judgment.

> B. **Trade Secret Misappropriation and Unfair Competition (Counts 2, 3 and 4) by Hanover**

Summary judgment is granted as to Plaintiffs' claims against Hanover for trade secret misappropriation under New York and federal law, and unfair competition under New York law (Counts 2, 3 and 4) because Plaintiffs proffer no evidence from which a reasonable jury could infer that Hanover had notice of the purported misappropriation. Without notice of any misappropriated trade secrets, Hanover cannot have used "improper means," *Schroeder*, 17 N.Y.S.3d at 691; 18 U.S.C. § 1839(5)(B), or displayed "bad faith," *Schroeder*, 17 N.Y.S.3d at 693, in acquiring them.

Plaintiffs claim that Hanover relied on Guarantors' information regarding Insurent's actuarial figures -- in particular, its loss ratio -- and either knew or was willfully ignorant that these were misappropriated trade secrets. Plaintiffs draw this inference based primarily on the fact that purportedly misappropriated information relating to Insurent's loss ratio appears prominently in the March 2015 presentation to Hanover. Plaintiffs proffer no evidence to support the conclusion that Hanover viewed Insurent's loss ratio figures as anything other than estimates based on non-proprietary information, as Guarantors represented.

Defendants argue that a negative inference should be drawn from the fact that Reinke of Hanover destroyed his notes of Hanover's first telephone conference with Guarantors when he moved his office from Minneapolis to Nashville. This argument is rejected. Defendants assert that this move happened "during the course of this action," but Reinke attests that the move actually took place in April 2015, well before this lawsuit was filed. Similarly flawed is

Plaintiff's argument that Hanover's knowledge of misappropriation should be inferred because "no one at Hanover admits to asking the Guarantors how they obtained such precise numbers." That the numbers were "precise" does not mean that Hanover believed them to be Insurent's actual, misappropriated numbers, particularly when Guarantors portrayed them as estimates.

### C. Breach of Contract and Breach of Fiduciary Duty by MacDonald (Counts 5 and 9)

Summary judgment is denied as to Plaintiffs' claims for breach of fiduciary duty and breach of contract (Counts 5 and 9) against MacDonald.

Under New York law, "[t]he elements of a cause of action for participation in a breach of fiduciary duty are: breach by a fiduciary of a duty owed to plaintiff; defendant's knowing participation in the breach; and damages." *SCS Commc'ns, Inc. v. Herrick Co.*, 360 F.3d 329, 342 (2d Cir. 2004); *see, e.g.*, *Schroeder*, 17 N.Y.S.3d at 689. "A defendant knowingly participates in the breach of fiduciary duty when he or she provides substantial assistance to the fiduciary, which occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." *Schroeder*, 17 N.Y.S.3d at 689 (internal quotation marks omitted); *accord Glob. Minerals & Metals Corp. v. Holme*, 824 N.Y.S.2d 210, 217 (1st Dep't 2006).

The elements of a breach of contract claim under New York law are: "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011) (applying New York law).

It is undisputed that MacDonald signed a shareholder's agreement precluding him from disclosing Insurent's and RS Holdings's confidential information, and that his fiduciary duty as an officer and director of Insurent precluded him from assisting Guarantors while he was still

employed by Insurent. If MacDonald is found to have misappropriated trade secrets from Insurent and assisted Guarantors while he was still working at Insurent -- which, as discussed above, a reasonable jury could find -- then he was in breach of his confidentiality agreement and his fiduciary duty to Insurent.

Defendants assert instead that Plaintiffs have not proffered evidence that Insurent suffered damages from MacDonald's purported conduct. This argument is rejected. Defendants do not dispute that Insurent was the only company in the New York City lease guaranty business prior to Guarantors' entry into the market, or that the two companies are currently the only companies in the market. Where there are only two providers in the market for a given product, one can infer that one provider's "sales [comes] at the expense of [the other]." *Electro-Miniatures Corp. v. Wendon Co.*, 771 F.2d 23, 27 (2d Cir. 1985).

### D. Inducement of Breach of Contract by Guarantors (Count 10)

Summary judgment is denied as to Plaintiffs' claim of inducement of breach of contract against Guarantors. "Tortious interference with contract requires the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third-party's breach of the contract without justification, actual breach of the contract, and damages resulting therefrom." *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1375 (N.Y. 1996); *accord Oddo Asset Mgmt. v. Barclays Bank PLC*, 973 N.E.2d 735, 742 (N.Y. 2012).

Defendants argue that summary judgment is warranted because Plaintiffs have not proffered evidence that Guarantors induced MacDonald to breach his confidentiality agreement with Insurent. This argument is unavailing. If Plaintiffs are able to prove at trial that MacDonald shared Insurent's trade secrets with Guarantors and otherwise assisted Guarantors while still

employed by Insurent, a reasonable jury could infer that Guarantors incentivized MacDonald to do so.

### E. Interference with Prospective Business Advantage (Count 6)

Summary judgment is granted as to Plaintiffs' claim for interference with prospective business advantage because Plaintiffs fail to proffer evidence of business relationships that were injured as a result of Defendants' alleged misconduct.

Under New York law, "[t]o prevail on a claim for tortious interference with business relations," which is "also known as tortious interference with prospective economic advantage," a plaintiff "must show that (1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 261 (2d Cir. 2015) (internal quotations marks omitted). "New York courts have placed some limits on what constitutes 'business relations' by rejecting, for example, a claim containing 'only a general allegation of interference with customers without any sufficiently particular allegation of interference with a specific contract or business relationship[.]'" *Id.* (quoting *McGill v. Parker*, 582 N.Y.S.2d 91, 95 (1st Dep't 1992)). "Failure to identify specific business entities with which the [p]laintiffs had business relationships is fatal to [a] tortious interference with business advantage claim[]." *Katz v. Travelers*, No. 16 Civ. 4389, 2017 WL 1317000, at *7 (E.D.N.Y. Mar. 10, 2017) (collecting cases). Likewise, failure to identify business relationships harmed by the interference warrants dismissal of tortious interference with business advantage claims. *See, e.g.*, *Cronos Grp. Ltd. v. XComIP, LLC*, 64 N.Y.S.3d 180, 195 (1st Dep't 2017).

The March 2015 presentation names specific real estate brokerages and investment companies that purportedly use or recommend Insurent, whose business Guarantors targeted.

11

However, Plaintiffs fail to proffer any evidence that Guarantors' relationship with any of these entities was harmed by Defendants' purported interference. Plaintiffs argue that Geller estimates that Insurent lost roughly 80% of its business due to Guarantors' interference, citing Geller's declaration. However, the declaration contains no such statement, or any other statement pertaining to business lost due to Guarantors' conduct.

### F. False Advertising – 15 U.S.C. § 1125(a) (Count 7)

Summary judgment is denied as to Plaintiffs' claim for false advertising under the Lanham Act, 15 U.S.C. § 1125(a), against Guarantors. "To prevail on a Lanham Act false advertising claim, a plaintiff must establish that the challenged message is (1) either literally or impliedly false, (2) material, (3) placed in interstate commerce, and (4) the cause of actual or likely injury to the plaintiff." *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 65 (2d Cir. 2016).

At issue in this claim are two purportedly false or misleading statements Defendants made to landlords: first, that Defendant MacDonald is the former Chief Underwriting and Claims Officer of Insurent; and second, that Guarantors' premium rates are up to 10 to 15% lower than Insurent's. Defendants argue that the first statement is not false because it is consistent with Geller's description of MacDonald as "head of claims and surveillance" and "managing director." This argument is rejected because, as Geller attests in his declaration, Insurent had a Chief Underwriting Officer, Steven Czark, who was MacDonald's boss at the company. Defendants argue in the alternative that the statement regarding MacDonald's position is not material because it is unlikely to "influence purchasing decisions" and does not pertain to "an inherent quality or characteristic" of Guarantors' lease guaranty (quoting *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997)). This argument is not addressed because the second statement,

12

that Defendants misrepresented the price difference between Insurent's and Guarantors' products, clearly meets the materiality requirement.

Defendants also argue that there is no evidence that Guarantors told landlords that its rates are "10 to 15% lower" than Insurent's. On the contrary, Bonneville testified at his deposition that Guarantors' employees told landlords and leasing agents that Guarantors' rates were "up to 10% to 15%" lower than Insurent's rates. A reasonably jury could find that this statement was "impliedly false" under the Lanham Act based on evidence that only one of Guarantors' rates was 10.4% lower than Insurent's and the rest were less than 10% lower.

Finally, Defendants argue that neither of the allegedly false statements caused injury to Plaintiffs. This argument is rejected. A reasonable jury could find that the statements influenced clients to select Guarantors over Insurent. As discussed, because Insurent and Guarantors are the only two providers of lease guaranties in New York City, one can infer that Guarantors' "sales . . . came at the expense" of Insurent. *Electro-Miniatures*, 771 F.2d at 27.

For these reasons, summary judgment is denied on the Lanham Act claim against Guarantors. Summary judgment is granted on the Lanham Act claim against MacDonald because Plaintiffs did not address, or proffer evidence of, his liability. *See, e.g.*, *Collins v. City of New York*, 295 F. Supp. 3d 350, 362 (S.D.N.Y. 2018) (deeming a claim abandoned where plaintiffs "do not discuss [it] in their opposition to summary judgment or explain what evidence exists that would support any theory of . . . liability" as to that claim).

### G. False Advertising – NYGBL § 350 (Count 8)

Summary judgment is denied as to Plaintiffs' claim against Guarantors for false advertising under NYGBL § 350. To prevail on a claim under the statute, a plaintiff must prove that "a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Koch v.*

*Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675 (N.Y. 2012).  Reliance is not an element.  *Id.* at 676.  For the same reasons summary judgment is denied as to Guarantors on the Lanham Act claim, summary judgment is also denied as to Guarantors on the NYGBL § 350 claim, but granted as to the other Defendants.  *See, e.g.*, *Playtex Prod., LLC v. Munchkin, Inc.*, No. 14 Civ. 1308, 2016 WL 1276450, at *3 (S.D.N.Y. Mar. 29, 2016) (analyzing false advertising claim under the Lanham Act and NYGBL § 350 together because the standards for the two claims are "substantially similar").

Defendants argue that summary judgment is warranted because Guarantors did not make the statements at issue to "consumers" under the statute, which are defined "narrowly as an individual who purchases goods and services for personal, family or household use."  *Tropical Sails Corp. v. Yext, Inc.*, No. 14 Civ. 7582, 2015 WL 2359098, at *3 (S.D.N.Y. May 18, 2015) (internal quotation marks omitted).  This argument is rejected.  Defendants cite no authority, and the Court is not aware of any, requiring that statements be made directly to consumers.  Rather, Plaintiffs need only show that the conduct in question is "consumer oriented," *id.* at *4, meaning that it has "a broader impact on consumers at large," *Beth Israel Med. Ctr. v. Verizon Bus. Network Servs., Inc.*, No. 11 Civ. 4509, 2013 WL 1385210, at *5 (S.D.N.Y. Mar. 18, 2013) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995)).

### H. Copyright Infringement (Count 1)

Summary judgment is granted as to Plaintiffs' claim for copyright infringement (Count 1) because Plaintiffs proffer insufficient evidence that they own any copyrights at issue.

"Copyright in a work . . . vests initially in the author or authors of the work."  17 U.S.C. § 201(a).  "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by

the owner of the rights conveyed or such owner's duly authorized agent." *Id.* § 204(a). Plaintiffs do not dispute that Insurent's lawyers at Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury Winthrop") and Fischbein Badillo drafted the agreements for which Plaintiffs assert copyright claims, and proffer no evidence suggesting that a signed writing exists conveying to Plaintiffs any copyright ownership of these agreements.

Plaintiffs argue that they own copyrights in the agreements under the work-for-hire doctrine. This argument is rejected. The Copyright Act defines "work made for hire" as "(1) a work prepared by an employee within the scope of his or her employment"; or "(2) a work specially ordered or commissioned" for certain enumerated uses, only "if the parties expressly agree" that the work is a work for hire in a signed written instrument. 17 U.S.C. § 101. Neither of these definitions applies here.

Plaintiffs also proffer a declaration by Pillsbury Winthrop partner David Keyko in support of their claim of copyright ownership. According to the declaration, records show that Pillsbury Winthrop in fact drafted the agreements in question, "is not claiming any copyright ownership rights in these agreements," and "has not sought to place any limitations on [Insurent's] use of these agreements." These statements do not evince a conveyance of copyright ownership or an agreement with Insurent that the agreements are "works for hire" under the Copyright Act.

## I.  Leave to Amend

Plaintiffs seek leave to amend their complaint to add RS Reinsurance, a Bermuda corporation and wholly-owned subsidiary of Plaintiff RS Holdings, as a Plaintiff. RS Reinsurance receives 53.5% of every premium paid by a purchaser of a lease guaranty policy. This amount is used as a reserve for payment of claims not paid by the issuer of the lease guaranty, Argonaut Insurance Company ("Argonaut"), pursuant to the agreement between RS Holdings and Argonaut. After RS Reinsurance pays any claims, it pays any excess premiums to

RS Holdings. Plaintiffs seek to add RS Reinsurance as a party in an abundance of caution because Defendants now claim that Plaintiffs may not sue for lost premiums that RS Reinsurance would have received.

Leave to amend is granted because the Court finds that "justice so requires." Fed. R. Civ. P. 15(a)(2). Defendants do not contest that profits from premiums are ultimately paid to RS Holdings. Permitting Plaintiffs to amend their complaint allows RS Holdings to sue for all of its purported lost profits while eliminating uncertainty as to whether RS Holdings can claim lost premiums received by RS Reinsurance without the latter entity in the lawsuit.

There is no evidence of "undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed." *Ladas*, 824 F.3d at 28 (internal quotation marks omitted). Plaintiffs state, and Defendants do not dispute, that Plaintiffs first became aware of Defendants' position regarding RS Reinsurance when they received defense expert Silver's report on December 18, 2017. Plaintiffs then deposed Silver on January 12, 2018, and sought leave to amend on February 2, 2018, three weeks after the deposition. Plaintiffs acted with adequate dispatch.

The proposed amendment would not result in "undue prejudice" to Defendants. *Id.* Defendants' counsel have known about RS Reinsurance from the outset of the action and have questioned Robert Rosenberg, CEO of Insurent, and Geller on the relationship between RS Holdings, Insurent and RS Reinsurance. Rosenberg and Geller are both directors of RS Reinsurance. Plaintiffs also have produced documents concerning RS Reinsurance, including the management agreement between RS Reinsurance and its contract manager, Marsh and McLennan, and the corporate documents for RS Reinsurance. Thus, there is no need for additional discovery concerning RS Reinsurance (and such additional discovery is not permitted).

Defendants argue that the proposed amendment is futile because RS Reinsurance is a

"foreign corporation doing business in this state without authority" under New York General Business Corporation Law ("BCL") § 1312(a), and is thus barred by the statute from "maintain[ing] any action or special proceeding in this state," *id.* This argument is unavailing. For a foreign company to be deemed as "doing business in this state" under BCL § 1312, "the intrastate activity of a foreign corporation [must] be permanent, continuous, and regular." *Netherlands Shipmortgage Corp. v. Madias*, 717 F.2d 731, 736 (2d Cir. 1983); *accord Mindy Weiss Party Consultants, Inc. v. Carl*, 285 F. Supp. 3d 560, 564 (E.D.N.Y. 2018) (internal quotation marks omitted). For purposes of § 1312, "a corporation is presumed to be doing business where it is incorporated." *New Asia Enterprises Ltd. v. Fabrique, Ltd.*, No. 13 Civ. 5271, 2014 WL 3950901, at *6 (S.D.N.Y. Aug. 13, 2014). "Non-compliance with the statute is an affirmative defense," *Domino Media, Inc. v. Kranis*, 9 F.Supp.2d 374, 385 (S.D.N.Y. 1998), and the party seeking to invoke it "bears the burden of proving that the corporation's business activities in New York were 'so systematic and regular as to manifest continuity of activity in the jurisdiction,'" *Manney v. Intergroove Tontrager Vertriebs GMBH*, No. 10 Civ. 4493, 2011 WL 6026507, at *7 (E.D.N.Y. Nov. 30, 2011) (quoting *S & T Bank v. Spectrum Cabinet Sales, Inc.*, 668 N.Y.S.2d 641, 642 (2d Dep't 1998)). Because Defendants proffer no evidence that RS Reinsurance has been doing business in New York for the purposes of § 1312, the proposed amendment is not futile. Leave to amend to add RS Reinsurance as a Plaintiff in this action is granted.

## IV.   CONCLUSION

For the foregoing reasons, summary judgment is GRANTED as to as to Count 1; Counts 2, 3 and 4 against Hanover; Count 6; Counts 7 as to MacDonald; Count 8 as to Hanover and MacDonald. Summary judgment is otherwise DENIED. For clarity, summary judgment is granted as to all remaining claims against Hanover. The claims to be tried are as follows:

- Count 2 - Trade Secret Misappropriation under New York Law against Guarantors and MacDonald

- Count 3 – Misappropriation under the Defend Trade Secrets Act of 2016 against Guarantors and MacDonald

- Count 4 - Unfair Competition under New York Law against Guarantors and MacDonald

- Count 5 - Breach of Fiduciary Duty under New York Law against MacDonald

- Count 7 - Unfair Competition under § 43(a) of the Lanham Act against Guarantors

- Count 8 - False Advertising under § 350 of New York General Business Law against Guarantors

- Count 9 - Breach of Contract under New York Law against MacDonald

- Count 10 - Inducement of Breach of Contract against Guarantors

Leave to amend the complaint to add RS Reinsurance as a Plaintiff in this action is GRANTED. Plaintiffs shall file a proposed Third Amended Complaint, together with a redline showing how it differs from the Second Amended Complaint, within **seven days** of the filing of this Opinion and Order, and shall serve RS Reinsurance by August 29, 2018.

The Clerk of Court is respectfully directed to close the motions at Docket Nos. 163, 169 and 171.

Dated: August 20, 2018
New York, New York

_____
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE